**United States District Court**

**Eastern District of Tennessee**

**Chattanooga Division**

Harold Hempstead

Plaintiff

V.

Tennessee Department of Corrections,

Frank Strada, David Dobson, Shawn Phillips,

Brett Cobble, Greg Williams, Vasquez

Defendants

Case No : 1:24-cv-00040-DCLC-SKL

FILED

OCT 28 2024

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

### Amended Civil Rights Complaint and Jury Demand

This is a civil action for damages and injunctive relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA) (42 U.S.C.§ 2000-CC), Americans with Disabilities Act (ADA) (42 U.S.C.§12101), Section 504 of the Rehabilitation Act (Section 504) (29 U.S.C.§794), 42 U.S.C. §1983, and T.C.A. §4-1- 407.

### Jurisdiction

1.) This Court has jurisdiction under 42 U.S.C. §§ 1331 and 1343, and 28 U.S.C. §1367.

### Parties

2.) Plaintiff was housed at Bledsoe County Correctional Complex (BCCX) during the events described in this Complaint.

1

3.) Defendants Tennessee Department of Corrections (TDOC), TDOC Commissioner Frank Strada, and TDOC Religious Services Director David Dobson are being sued in their individual and official capacities. BCCX Warden Shawn Phillips, Associate Warden and Institutional ADA Coordinator Brett Cobble, and Chaplains Greg Williams and Vasquez are being sued in their individual capacities. All defendants were acting under the color of state law at all times relevant to this Complaint.

## Statement of Facts

4.) TDOC receives federal financial assistance.

5.) **Mobility Impairment:** Plaintiff had severe mobility problems that led to him being referred to a physical therapist while he was housed at Northeast Correctional Complex (NECX).

6.) On March 5, 2021, Plaintiff received the following TDOC Medical B restrictions: "No heavy lifting 20 lbs. max, able to frequently lift or carry objects up to 10 lbs., limited strenuous activity for extended periods of time, no continuous standing or walking for extended periods of time, no repetitive stooping or bending, no climbing or balancing (uneven ground), no participation in weight lifting or strenuous athletics or outside work in spring or summer, and must be housed on the first floor bottom bunk." These restrictions caused Plaintiff to be placed on "Medical Incentive" status which prohibits him from having every job at BCCX.

7.) In September 2022, Dr. Brian Samuel told the Plaintiff that he needs to receive an MRI of his back to determine if he is on a path to having neuropathy and if he needs back surgery.

8.) In or around September 2023, Plaintiff was diagnosed with lumbarsacral radiculopathy, and thereafter prescribed Nortriptyline for the nerve pain in his right leg and foot.

9.) Electronic imaging shows that the Plaintiff has spondylosis, multiple disc. disease, a deformed L-1 disc., lymph node issues in his lower abdomen, and a reduced lordosis.

10.) Plaintiff's spondylosis causes him bladder issues which make him urinate 15 to 20 times a day.

11.) **Visual Impairment:** Electronic imaging shows the Plaintiff has cornea thinning, interior offset keratoconus, and stigmatism(s).

2

12.) Optometrists have recommended that the Plaintiff be given access to audio book services and to a magnifier.

13.) The Florida Department of Corrections (FDC) listed the Plaintiff as a visually disabled inmate and allowed him to receive audio book services. After the Plaintiff's March 17, 2017, interstate corrections compact from FDC to TDOC, he received audio book services until the NECX Warden ordered that all of the audio books be confiscated to make the officer's job easier, who was responsible for distributing the audio cassettes.

14.) In May and June 2023, Optometrist Shannon Shelley told the Plaintiff that he needs to see an ophthalmologist because he has a deteriorating eye condition will cause him to go blind within a year or two. Dr. Shelley referred the Plaintiff to an ophthalmologist to receive an evaluation for cornea crosslinking and contact lens fitting.

15.) The Plaintiff who has a Doctor of Biblical Studies Degree and is a licensed preacher, is a member of the Presbyterian Church in America (PCA), which is a Protestant Reformed Christian Church. He is also the author of the book " "Protestant Christianity: A Prisoner's Perspective and Defense."

16.) Following the Plaintiff's March 17, 2017, interstate corrections compact from FDC to TDOC, he was housed at Bledsoe County Correctional Complex (BCCX) Site One until sometime in August 2017, when he was transferred to Northeast Correctional Complex (NECX).

17.) While the Plaintiff was housed at NECX (August 2017-November 2020), he filed several grievances on TDOC staff denying him and other Reformed Christian inmates' access to Reformed Christian ministers and services, to receive the Lord's Supper by a Reformed Christian minister, to have access to Reformed Christian books, and for the Plaintiff to be to be allowed to conduct a Reformed Christian Bible study.

18.) After the Plaintiff was told that the NECX Warden wanted him to be transferred and that he could choose the prison where he wanted to go, Plaintiff chose Bledsoe County Correctional Complex (BCCX) Site Two, because he was told that a Reformed Christian minister conducted services there.

**Claim One**

3

19.) Following the Plaintiff's November 2020 arrival to BCCX Site Two, he learned that Chaplain Phillip Rudolph was the Reformed Christian minister who conducted services there.

20.) The deterioration in the Plaintiff's mobility drastically reduced his ability to attend any chapel services throughout 2021, and totally prohibited him from attending any chapel services at Site Two between January 2022 and September 2022.

21.) On September 5, 2022, Plaintiff submitted a TDOC Request for Religious Accommodation form (CR- 3735 Form[1]) to Defendant Chaplain Greg Williams requesting access to a wheelchair, so he could attend Chaplain Rudolph's services. Defendants Williams, Warden Shawn Phillips, and Associate Warden and Institutional ADA Coordinator Brett Cobble never provided the Plaintiff with a response to his CR-3735 Form.

### Claim Two

22.) On September 5, 2022, Plaintiff submitted a CR-3735 Form to Defendant Williams requesting access to the following accommodations so he could practice his faith in his cell if he was denied access to a wheelchair: audio book, audio Bible, portable DVD player, and a magnifier. Defendants Williams, Phillips, and Cobble never provided the Plaintiff with a response to his CR-3735 Form.

### Claim Three

23.) On September 18, 2022, Plaintiff filed a grievance on TDOC's failure to comply with 28 CFR § 35.106, causing him to not know how to apply for an accommodation raising the top bunk in his cell three inches and extending the bottom bunk four inches. The grievance explained that unless the bunk modifications were made, he would not be able to sit or lay on his bottom bunk with good posture; that he has spondylosis and other back problems; and that page 948 of the Mayo Clinic Family Health (Fourth Edition) states that bad posture causes back pain, trouble breathing, and fatigued muscles. Additionally, that the inability to have good posture when he sat or laid in his lower bunk was contributing to his back pain and lower body problems, and thus to his mobility impairment. Plaintiff did not request any accommodations in the

---

[1] All of the CR-3735 Forms that the Plaintiff submitted for accommodations and that are listed in the Complaint, were submitted pursuant to RLUIPA.

4

grievance and he explained that 28 CFR § 35.152 (b) (3) placed a federal obligation on TDOC to modify BCCX Site Two cells for disabled inmates.

24.) On September 21, 2022, Cobble responded to this grievance by stating, "I will have you moved to a handicap cell at Site One." This housing accommodation that was not approved by a medical provider was used as a pretext to transfer/move the Plaintiff from BCCX Site Two to BCCX Site One where he would be subjected to among other things a denial of his right to practice his faith as a Reformed Christian.

### Claim Four

25.) After Plaintiff's arrival to Site One, he learned that there were no Reformed Christian services there and that Defendants Phillips, Cobble, and Chaplain Vasquez had established the Arminian form of Christianity and plan of salvation as the only form of Christianity to exist as Site One. The Plaintiff and other Reformed Christian inmates at Site One are being given an option to attend services where Arminianism is proclaimed or to not attend any services at all.

26.) A short time after the Reformation began (October 31, 1517) a man named Jacob Arminius was born (1560). Arminius' disagreement with the Reformed Christian beliefs concerning God's plan of salvation led to him creating five doctrines explaining what he believed about God's plan of salvation. Those doctrines eventually became known as the "Five Doctrines of Arminianism" and "Arminianism."

27.) The International Synod at Dort (1618-1619) issued the Canons of Dort condemning Arminianism as heresy that attacks God, Christ's substitutionary atonement, and Scripture[2].

28.) The essential differences between the Reformed Christian plan of salvation and the Doctrine of Justification by Faith Alone and the Arminian and Wesleyan Arminian[3] plans of

---

[2] The Westminster Confession of Faith, which explains the biblical doctrines that are believed by the Presbyterian Church in America (PCA), which is the church that the Plaintiff is a member of, shows that the PCA consider the Canons of Dort to be authoritative by Reformed Christians like the Plaintiff. The Canons of Dort show that the Five Doctrines of Arminianism attack the essential teachings of the Plaintiff's Reformed Christian beliefs.

[3] John Wesley (1703-1791) and his associates, who also opposed the Reformed Christian beliefs concerning God's plan of salvation and Doctrine of Justification by Faith Alone, made minor modifications to the Five Doctrines of Arminianism and created what came to be known as Wesleyan Arminianism.

5

salvation and doctrines of justification, is supported historically and across the world by Reformed Christians not attending churches where either form of Arminianism is proclaimed, and likewise, those who favor the Arminian views not attending Reformed Christian churches; congregants from both types of Arminian churches trying to persuade Reformed Christians to forsake their beliefs and to favor one of the Arminian plans of salvation and doctrines of justification, and likewise, Reformed Christians doing the same as it concerns congregants from both types of Arminian churches; and Reformed Christians and adherents to both forms of Arminianism referring to the opposing views as satanic and the god of the opposing views as Satan[4].

### Claim Five

29.) On October 29, 2022, and June 11, 2023, Plaintiff submitted CR-3735 Forms to Chaplian Vasquez requesting the following accommodations so he could practice his faith as a Reformed Christian at BCCX Site One: (1) to receive the Lord's Supper weekly from a Reformed Christian minister; (2) for Defendant Phillips to approve the Plaintiff to listen to CDs, and listen and watch DVDs of Reformed Christian teachers and preachers in his cell and\or in a location in his housing unit. TDOC Policy 118.01 V1. C. 3.; (3) to be allowed to have his Reformed Christian books mailed back to him that Unit Manager Greg Hale forced the Plaintiff to mail to society on September 23, 2022; and (5) a portable desktop magnifier and portable video magnifier so he can read Reformed Christian books with small font. Defendants Vasquez, Phillips, and Cobble never provided the Plaintiff with a response to these CR-3735 Forms.

### Claim Six

30.) On June 10 and 11, 2023, Plaintiff submitted CR-3735 Forms requesting the following accommodations so he could practice his faith as a Reformed Christian: (1) authorization to teach a Reformed Christian service; (2) access to Reformed Christian books; and (3) that a weekly Reformed Christian service be conducted at Site One. Defendants Vasquez, Phillips, and Cobble never provided the Plaintiff with a response to his CR-3735 Forms.

---

[4] The issue of if God (Reformed Christianity (monergism)) rather than man (Arminianism and Wesleyan Arminianism(synergism)) determines who is going to be saved involves all of the essentials of the Christian faith; namely, the being , person, and attributes of God, the covenants, the nature of original sin, the motive of God in providing redemption, the nature and design of the work of Christ, and the work of the Holy Spirit.

6

**Claim Seven**

31.) On July 9, 2023, Plaintiff mailed a letter to Defendant Religious Services Director, David Dobson requesting assistance with the Plaintiff being allowed to practice his faith.

32.) On August 11, 2023, Defendant Vasquez told the Plaintiff that Defendant Dobson sent an email directing Vasquez to have the Plaintiff complete a CR-3735 Form and for Vasquez to send the completed CR-3735 Form directly back to Dobson.

33.) On August 13, 2023, Plaintiff gave Defendant Vasquez two CR-3735 Forms to send to Defendant Dobson. The Forms requested the following accommodations:

(1) To be moved/ transferred back to Site Two where there are Reformed Christian services. Plaintiff explained that Defendants Phillips and Cobble were contending that the Plaintiff was only being housed at Site One, because Site Two did not have any handicap cells. Plaintiff also explained that if BCCX was not going to modify a cell for him as required by 28 C.F.R. § 35. 152(b) (3), then he was requesting the modification of a Site Two cell in accordance with RLUIPA.

(2) For a weekly Reformed Christian service to be conducted at Site One.

(3) To receive an audio book with the Bible on cassette or an audio Bible. Plaintiff explained that his visual impairment prohibits him from reading the Bible as much as he wants to and that this accommodation would allow him to be obedient to the Scriptures that command him to study God's Word. 1 Tim. 4:13; 2 Tim. 2:15; Deut. 6:5-9.

(4) To receive audio books on cassette of Reformed Christian teachers teaching the Bible so he can learn more about his faith. 1 Tim. 4:6,13; 6:3; 2 Tim. 3:10,16,17; Tit. 2:6,7,10.

(5) A portable DVD player with approval to receive DVDs of Reformed Christian teachers teaching the Bible as an alternative to the audio book accommodation.

(6) To receive a durable New King James Bible with 15-point font or larger.

(7) To receive a magnifier so he can read Reformed Christian books that he cannot obtain on cassette or DVD.

(8) Permission to have his Reformed books mailed back to him that he was forced to mail to society on September 23, 2022.

(9) Authorization to conduct a Reformed Christian Bible study so he can be obedient to the commands in Mt. 28:9,10; Mk. 16:15; Rom. 10:14-17; and 2 Tim. 4:2.

(10) To be provided with access to Reformed Christian, church history, and apologetics books with 15-point or larger from the chapel or library.

(11) To regularly receive the Lord's Supper (Body (bread) and Blood (juice)) from a Reformed Christian minister with other Reformed Christian inmates. This would be in accordance with Christ's command (Lu. 22:14-20; 1 Cor. 11:23-26) and the Westminster Confession.

34.)  On October 20, 2023, Defendant Vasquez asked the Plaintiff if he received Defendant Dobson's response to his August 13, 2023 CR-3735 Forms. The Plaintiff told Vasquez that he did not receive the response. Vasquez replied that he would provide the Plaintiff with a copy of Dobson's response. As it concerns the requested accommodations, Vasquez said that Dobson told him to "take care of it." During the same conversation, Vasquez alleged that he was going to help the Plaintiff obtain access to the DVDs and books that are mentioned in the fifth and tenth accommodations, which as of the date on this Complaint, he has not obtained.

**Claim Eight**

35.)  On October 26, 2023, Plaintiff filed a grievance (362392) on the Doctrine of Justification by Faith Alone not being proclaimed by any of the ministers who conduct religious services at Site One. Plaintiff explained the following in the grievance:

(1)  The Arminian doctrine of justification and plan of salvation are being proclaimed at all of the alleged Christian services at Site One.

(2)  Since the Doctrine of Justification by Faith Alone and the biblical plan of salvation are not being preached or taught at any of the alleged Christian services at Site One, biblical Christianity does not exist at Site One.

(3)  Defendants Vasquez, Phillips, and Cobble are responsible for ensuring that biblical Christianity exist at Site One.

8

(4) The possibility existed that the Plaintiff could be subjected to retaliation for the filing of this grievance, and that an attempt could be made to hinder his First Amendment right to redress of grievances.

36.) As of the date on this Complaint, biblical Christianity still does not exist at BCCX Site One.

**Claim Nine**

37.) During the time that the Plaintiff has been housed at Site One, he has made numerous requests to be moved back to Site Two, where he was not subjected to the unconstitutional treatment that exist at Site One, and where he had access to the services, programs, and activities that exist at Site Two, but that do not exist Site One. For instance:

1. Site Two is considered one of the safest prisons in TDOC and it only houses minimum custody inmates. While the minimum custody Plaintiff was housed there, he slept in one of the least violent units and the majority of the inmates that were housed in his unit were anti to drugs.

2. Defendants Phillips and Cobble have been using Unit 25B at Site One (where the Plaintiff has been housed) to house the BCCX population inmates, who they consider to be the worse. It has been regularly used to house (1) a large quantity of drug addicts from Site Two and other prisons who owe drug debts for drugs they got from other inmates on credit; (2) inmates who were caught selling or smuggling drugs at Site Two and other prisons; (3) minimum, medium, and even close custody inmates who were given overrides to medium custody; and (4) inmates listed as sexual aggressors on TDOC's Prison Rape Elimination Act Screening System Application (PREA System). These conditions have caused the Plaintiff to live in a state of anxiety and stress that he did not have at Site Two.

3. Unit 25B at Site One houses inmates who have been cleared by security and medical staff to have jobs that help in the operation of Site One. Plaintiff's medical incentive status prohibits him from having every job at Site One. 28 C.F.R. 35.152 (b) (2) (i).

4. While the Plaintiff was housed at Site Two, he had to walk about 250 steps to the chow hall, 150 steps to the medical department, and every location on the compound was within 600 steps from his housing unit.

9

5. After his transfer to Site One, he has had to walk about 600 steps to the chow hall, 630 steps to the medical department, and the majority of the locations that he has had to access are 600 or more steps from his housing unit.

6. Plaintiff has TDOC Medical B restrictions prohibiting continuous standing or walking for extending periods of time, and he has not been able to walk from his housing unit to any of the mentioned locations at Site One without pain and being at risk of falling. Also, these conditions have caused a deterioration in his ability to walk and they have prevented him from regularly accessing different locations. For instance, Plaintiff has not been able to walk to the chow hall for more than 500 meals since his arrival to Site One.

7. Plaintiff who is listed in TDOC's PREA System as "identified victim," was able to shower in shower stalls where staff and inmates could not watch him, while he was housed at Site Two and NECX.

8. In the Plaintiff's Site One housing unit, inmates loiter on the upper tier and stairs in front of the showers watching inmates while they are showering. While the shower stalkers cannot see below the waist of any of the inmates while they are showering, the voyeuristic activity makes the Plaintiff and a lot of the inmates in his unit so uncomfortable that they keep the lights off in front of the shower stalls and in the showers all day. Having to shower in a dark shower stall to avoid the voyeuristic activity, places the mobility and visually disabled Plaintiff at high risk of falling and hurting himself.

9. While the Plaintiff was housed at Site Two, he was a member of the Lifer's Club, which allowed him to order food from society on almost a monthly basis (incentive meals) and be involved with activities that helped the needy in society; he could wash and dry his own clothes, and he and all of the other inmates were given a key for their cell.

10. At Site One there is no Lifer's Club, no regular incentive meals, no ability to help the needy in society, and since the Plaintiff cannot wash and dry his own clothes they are regularly returned to him dirty and wet.

11. While the Plaintiff was housed at Site Two and NECX, he was allowed to keep all of his legal materials in his cell.

12. After he was moved to Site One, he was forced to place all of his legal materials in the Intake Storage Room, which is approximately 800 steps from his housing unit. Plaintiff's mobility problems have on several occasions prevented him from being able to access his stored legal materials.

13. While the Plaintiff was housed at Site Two and NECX, he was allowed to keep all of his Reformed Christian books in his cell.

14. After the Plaintiff was moved to Site One, he was forced to mail 90 percent of his Reformed Christian books to society. This drastically reduced his ability to practice his faith.

15. Plaintiff, who has Medical B restrictions prohibiting repetitive stooping or bending, was able to access all of the lockers in his Site Two and NECX cells.

16. At Site One, Plaintiff cannot access his clothes and commissary lockers in his cell without stooping or bending. The clothes locker is about six and a half inches from the floor and the commissary locker is about 12 and a half inches from the floor. The repetitive stooping and bending that the Plaintiff has had to do on a daily basis to access these lockers has caused him daily pain.

17. During the last year or longer that the Plaintiff was housed at Site Two, he was not subjected to any racial discrimination. After he was moved to Site One, he was subjected to a lot of racial discrimination. Included but not limited to staff calling him a "n-gger lover" several times; threatening to place him in segregation for frivolous reasons, dispose of his personal property, poison his segregation food tray(s), and to place an inmate in his segregation cell that would rape him.

### Claim Ten

38.) On March 28, 2023, Plaintiff filed a grievance (358755) explaining that he is an FDC mobility impaired inmate with spondylosis housed in TDOC on interstate compact, and Defendants Phillips and Cobble are discriminating against him by not allowing him to access the services, programs, and activities at Site Two, while allowing TDOC mobility disabled inmates who have spondylosis to access the services, programs, and activities at Site Two. Plaintiff also

explained that if he was given access to said services, programs, and activities, he would not need an incentive transfer to another TDOC prison[5]. This grievance was denied.

39.) Plaintiff believes what the Bible and the Westminster Confession teach that he is to show his love to God by keeping His commandments. Jn. 14:15,23; 15:10; 1Jn.2:3-5; 3:24.

40.) While the Plaintiff knows that he cannot lose his salvation ( Jn.10:27-30; Rom. 8:29-30, 35-39; Eph. 1:13,14; Phi. 1:6; 2 Tim. 1:12), he also knows as the Westminster Confession explains that by "neglect of the means of ...preservation, [he can] fall into grievous sins ( Mt.26: 70,72,74), and, for a time, continue therein (Ps. 51): whereby...[he will] incur God's displeasure (Isa. 64: 5,7,9; 2 Sam. 11:27), and grieve His Holy Spirit (Eph. 4:30), come to be deprived of some measure of ...graces and comforts (Ps. 51:8,10,12; Rev. 2:4; Song of Sol. 5:2-4, 6), have...[his] heart...hardened (Isa. 63:17; Mk. 6: 52; 16:14), and...[his] conscience...wounded ( Ps. 32: 3,4; 51:8), hurt, and scandalize others ( 2 Sam. 12: 14), and bring temporal judgments upon [himself]. Ps. 89: 31,32; 1Cor. 11:32.

41.) The refusal to provide the Plaintiff with a wheelchair while he was housed at Site Two and denying him access to Reformed Christian services throughout the time he has been housed at Site One, has made it where he could not be obedient to the biblical command to not forsake the assembly of the brethren. Heb. 10: 24,25; Ac. 2:42,46.

42.) The denial of access to Reformed Christian services and a Reformed Christian minister has made it where the Plaintiff cannot receive the Lord's Supper in accordance with the commands of Christ (Mt. 26: 26-29; 1 Cor. 11:23-32) and the Westminster Confession, which requires that it be dispensed by a lawfully ordained minister of the Word/ a Reformed Christian minister and received with other Reformed Christians, that neither element (bread and juice) be denied or worshipped, and that it not be deemed as a "sacrifice made at all for remission of sins of the quick or dead, but only a commemoration of that one offering up of Himself by Himself, upon the cross, once for all: and a spiritual oblation of all possible praise to God, for the same."

---

[5] Plaintiff has known since 2021 that he would have serious protection problems at every prison in TDOC except for BCCX Site Two, Turney Center, Louis M. DeBerry Special Needs Facility (DSNF) and Riverbend. However, his desire to be able to practice his faith, and receive his other rights under the ADA and Section 504 caused him to previously seeks a transfer to unsafe prisons. Farmer V. Breman, 511 U.S. 825 (1994.)

43.) The denial of a large print Bible; audio Bible; DVD and CD players and DVDs and CDs of Reformed Christian ministers teaching and preaching the Bible; Reformed Christian, church history, and apologetics books; and the magnifiers has made it where the Plaintiff cannot be obedient to the commands to diligently study Scripture and to learn more about his faith. Deut. 6: 5-9; Ac. 17:11; 1 Tim. 4: 6,13; 2 Tim. 2: 15; 3:10,16,17; 4: 2; Tit. 2:6,7,10. Plaintiff has been unwillingly disobedient to these commands because he has only been able to study Scripture and Reformed Christian books for about 20 minutes every two to three hours (one hour 20 minutes to two hours a day), because of his visual disability, and he has not been able to attend any Reformed Christian services.

44.) The denial of the Plaintiff's request to conduct a Reformed Christian Bible study has made it where he cannot be obedient to the commands to preach the gospel and teach Scripture. Mt. 28: 19,20; Mk. 16: 15; Rom. 10:14-17; 2 Tim. 4:2.

45.) Plaintiff is biblically commanded to not have any fellowship with those who proclaim a different/false gospel/doctrine of justification, and those who reject the Doctrine of God. 2 Cor. 11:4; Gal. 1:6-9; Rom. 16:17; Eph. 5: 11; 2 Thess. 3:14; 1 Tim. 6:3-5; 2 Tim. 3: 2-5; 2 Jn. 9,10.

46.) Denying the Plaintiff access to the things mentioned in paragraphs 41-44 of this Statement of Facts has made it where the Plaintiff cannot be obedient to the biblical commands to keep his mind focused on God and the things of God if he wants the peace of God (Isa. 26:3; Phi 4: 8,9; Jn. 16:33), and to draw near to God, if he wants God to draw near to him. Jam. 4:8; Heb. 10:22; Ps. 73:28.

### Claim Eleven

47.) In or around June 2023, Optometrist Shannon Shelley told the Plaintiff that she was going to refer him to a local ophthalmologist to be evaluated for cornea crosslinking and contact lens fitting. Plaintiff told Dr. Shelly that he consented to the evaluation, but for physical safety reasons, he could not agree to be transferred to DSNF[6].

---

[6] Plaintiff can be safely housed in DSNF's population units but not DSNF's transit house unit.

13

48.) A short time later Dr. Shelley told the Plaintiff that after she told the medical staff that she wanted to refer the Plaintiff to the local ophthalmologist that she had been regularly referring inmates to, the medical staff told her that she could not refer the Plaintiff or anymore inmates to said doctor.

49.) Plaintiff needs his vision to read his Bible and Reformed Christian books, so on November 8, 2023, Plaintiff filed a grievance (362594) on the medical services at DSNF not being made accessible to him as required by the ADA and Section 504. The grievance explained:

> (1) The Plaintiff's lower body medical problems and TDOC Medical B restriction.

> (2) That TDOC Policy 113.34 V1. A.1. states: "DSNF shall be utilized to provide extended clinical services and treatment for male inmates who require medical care that is beyond the level of care that can be provided in an institutional infirmary setting … [and] also as a central assessment, evaluation, and referral center for other male TDOC institution."

> (3) Plaintiff is a mobility impaired inmate, who is not confined to a wheelchair, who needs access to the medical services that are only provided at DSNF and he is being given an option to transfer to DSNF like inmates who are not mobility impaired or to refuse said medical transfer.

> (4) Plaintiff needs access to an ophthalmologist at DSNF.

> (5) If the Plaintiff wants to see an ophthalmologist at DSNF, he would have to agree to be subjected to the following conditions:

> (a) Plaintiff would be awakened very late at night and told to pack his property. This would take one or two hours to do, and it would require him to repetitively stoop and bend. This would cause him a lot of pain, irritate existing lower back and body medical conditions, and violate his Medical B restrictions prohibiting repetitive stooping and bending.

14

(b) Plaintiff would have to pick up boxes of legal papers and bags of books, clothing, commissary, etc., and place them on a cart or carry them. This would cause him a lot of pain, irritate existing lower back and body medical conditions, and violate his Medical B restrictions.

(c) Plaintiff would have to walk in the dark the more than 800 steps between his housing unit to the old Intake Property Room. This would place him at risk of falling, cause him pain, irritate existing lower back and body medical conditions, and violate his Medical B restrictions prohibiting continuous walking.

(d) Plaintiff would have to walk in shackles and handcuffs prior to getting on the bus; while on the bus and it is moving, if he wants to urinate, and to get on and off the bus. The chances of the Plaintiff falling are enhanced if he has to walk in shackles. If he is wearing shackles and handcuffs and he falls, the handcuffs would place him at a higher risk of being seriously hurt.

50.) Plaintiff also explained that he is not being provided with access to the medical services at DSNF that non-mobility impaired inmates are being given access to, in that, they are not being put in a position where they have to agree to be subjected to pain, irritation of their medical problems, and be at risk of being hurt to access the medical services at DSNF.

51.) Non-mobility impaired and wheelchair confined inmates can access all of the locations at BCCX without having any pain, irritation of their medical problems, or be at risk of hurting themselves.

52.) That the Defendants know that Reformed Christianity is essentially different from the Arminian form of Christianity that exists at BCCX Site One.

53.) Defendants TDOC, and Frank Strada have the authority to order that the Plaintiff be transferred/moved back to BCCX Site Two, that a Site Two cell be modified for him, that he receives the accommodations that he is seeking and that he needs to practice his faith as a Reformed Christian, and that he receive safe access to an ophthalmologist to receive treatment for his vision.

## Exhaustion of Administrative Remedies

15

54.) Plaintiff has exhausted all available administrative remedies. Ross V. Blake, 578 U.S. 632 (2016).

<b>Statement of Claim[7]</b>

**Claim One:** Defendants Williams, Phillips, and Cobble denied the Plaintiff his rights under RLUIPA by denying him access to the wheelchair that he needed to attend Chaplain Rudolph's Reformed Christian services. This caused the Plaintiff to not be able to be obedient to the biblical commands to not forsake the assembly of the brethren and to receive the Lord's Supper as prescribed in the Bible and the Westminster Confession. **Statement of Facts, Paragraphs 19, 21, 39-42, 46, 51-53.**

**Claim Two:** Defendants Williams, Phillips, and Cobble denied the Plaintiff his right under RLUIPA, by denying him access to the audio book, audio Bible, portable DVD player, and the magnifier accommodations that he requested at BCCX Site Two, and that he needed to practice his faith as a Reformed Christian. The denial of each of these accommodations made it where he could not be obedient to the biblical commands to diligently study Scripture and learn more about his faith. **Statement of Facts, Paragraphs 22, 39, 40, 43, 46, 51-53.**

**Claim Three:** Defendants Phillips, and Cobble denied the Plaintiff his rights under RLUIPA, by not complying with 28 C.F.R. 35. 152 (b) (3) and modifying a Site Two cell for him, but instead, moving him from Site Two where he could practice his faith as a Reformed Christian, to BCCX Site One where he could not practice his faith. **Statement of Facts, Paragraphs 23, 39, 40-46, 51-53.**

**Claim Four:** Arminianism was created in opposition to the essential teachings of the Reformed Christian faith concerning salvation, and the Plaintiff and his church (PCA) consider it to be a heresy, because of the obnoxious, gross, and evil attacks that the Arminian doctrines make on God, Christ's atonement, and Scripture. Defendants Phillips, Cobble, and Vasquez denied the Plaintiff his rights under RLUIPA, Free Exercise and Establishment clauses of the First Amendment, and T.C.A. 4-1-407, by establishing Arminianism as the only alleged form of Christianity to exist at Site One, and giving the Plaintiff an option to convert and attend

---

[7] The claims in this Complaint that are raised under RLUIPA, which was enacted in 2000, are governed by the four-year statute of limitations in 28 U.S.C. 1658 (a).

16

Arminian services or to not attend any services at all. **Statement of Facts, Paragraphs 25-28, 39-46, 51-53.**

**Claim Five:** Defendants Vasquez, Phillips, and Cobble denied the Plaintiff his rights under RLUIPA, Free Exercise and Establishment clauses of the First Amendment, ADA, Section 504, and T.C.A. § 4-1-407, by denying him access to each of the individual accommodations (i.e. to receive the Lord's supper weekly from a Reformed Christian minister, to be able to listen to CDs and listen and watch DVDs of Reformed Christian teachers and preachers in his cell and/or in a location in his housing unit, permission to have his Reformed Christian books mailed back to him that he was forced to mail to society on September 23, 2022, and access to the portable desktop magnifier and portable video magnifier that he requested at BCCX Site One and that he needs to practice his faith as a Reformed Christian. The denial of these accommodations made it where he could not be obedient to the biblical commands to diligently study Scripture and to learn more about his faith. **Statement of Facts, Paragraphs 29, 39, 40, 43-46, 51-53.**

**Claim Six:** Defendants Vasquez, Phillips, and Cobble denied the Plaintiff his rights under RLUIPA, Free Exercise and Establishment clauses of the First Amendment, and T.C.A. § 4-1-407, by not even considering his requests to conduct a Reformed Christian Bible study, receiving access to Reformed Christian books, and that a weekly Reformed Christian service be conducted at BCCX Site One. TDOC Policy 118.01 V. D. 2. b.. Since the Defendants have permitted inmates to be in different capacities over other inmates in various locations at BCCX, they have created circumstances like those in Spratt V. Rhode Island Department of Corrections, 482 F.3d 33 (1st Cir. 2007). The denial of these accommodations has caused the Plaintiff to be denied his right to practice his faith as a Reformed Christian. **Statement of Facts, Paragraphs 30, 39, 40, 44-46, 51-53.**

**Claim Seven:** Defendants Dobson, Vasquez, Phillips, and Cobble denied the Plaintiff his rights under RLUIPA, Free Exercise and Establishment clauses of the First Amendment, ADA, Section 504, and T.C.A. § 4-1-407, by denying him access to each of the individual accommodations (i.e. for a BCCX Site Two cell to be modified and for the Plaintiff to be moved back to said Site where he can practice his faith; for a weekly Reformed Christian Bible study to be conducted at BCCX Site One; to receive access to an audio book with the Bible on cassette or an audio Bible; to receive access to audio books of Reformed Christian teachers teaching the

17

Bible, or access to a portable DVD player with approval to receive DVDs of Reformed Christian teachers teaching the Bible; to receive a New King James Bible with 15-point font or larger; to receive access to a magnifier, so he can read Reformed Christian books that he cannot obtain on cassette or DVD; to receive permission to have his Reformed Christian books mailed back to him that he was forced to mail to society on September 23, 2022; to receive authorization to conduct a Reformed Christian Bible study; to receive access to Reformed Christian, church history, and apologetics books, and to regularly receive the Lord's Supper from a Reformed Christian minister with other Reformed Christian inmates) that he requested at BCCX Site Two and that he needs to practice his faith as a Reformed Christian. The denial of these accommodations made it where the Plaintiff could not practice his faith. **Statement of Facts, Paragraphs 31-34, 39, 40, 42-46, 51-53.**

      **Claim Eight:** Defendants Vasquez, Phillips, and Cobble denied the Plaintiff his rights under RLUIPA, Free Exercise and Establishment clauses of the First Amendment, and T.C.A. § 4-1-407, by denying him access to services where the Reformed Christian Doctrine of Justification by Faith Alone and biblical plan of salvation are being preached or taught, and thereby denying him access to biblical Christianity. This has made it where the Plaintiff could not practice his faith. **Statement of Facts, Paragraphs 35, 36, 39, 40, 45, 46, 51-53.**

      **Claim Nine:** Defendants TDOC, Strada, Phillips, and Cobble denied the Plaintiff his rights under the ADA, Section 504, and Title VI of the Civil Rights Act (1964), by subjecting him to each of the individual named conditions at Site One. This caused him to be denied the access required by the ADA and Section 504 to each of the individual named locations at Site One. **Statement of Facts, Paragraphs 37, 51-53.**

      **Claim Ten:** Plaintiff is a FDC mobility impaired inmate with spondylosis. Defendants TDOC, Strada, Dobson, Phillips, and Cobble denied the Plaintiff his rights under the ADA and Section 504, by not allowing him to access the services, programs, and activities at Site Two, while allowing TDOC mobility impaired inmates who have spondylosis to access the services, programs, and activities at Site Two. **Statement of Facts, Paragraphs 38, 51-53.**

      **Claim Eleven:** TDOC, Strada, Phillips, and Cobble have denied the Plaintiff access to the medical services at DSNF in violation of the ADA and Section 504. This has caused him to be denied the medical care that he needs for his eyes. **Statement of Facts, Paragraphs 47-53.**

## Statement of Damages

Wherefore the Plaintiff requests that this Honorable Court grant the following relief:

A.) Issue injunctions ordering:

1.) that the Plaintiff receive each of the requested accommodations;

2.) that the Plaintiff be moved back to BCCX Site Two;

3.) that the Plaintiff be provided with access to a Reformed Christian minister and Reformed Christian services;

4.) that the Plaintiff be allowed to regularly receive the Lord's Supper as required by his faith as a Reformed Christian;

5.) that the Plaintiff be allowed to conduct a Reformed Christian Bible study;

6.) that the Plaintiff be allowed to have his Reformed Christian books mailed back to him that he was forced to mail to society on September 23, 2022;

7.) that the Plaintiff be provided with ADA and Section 504 compliant access to the medical care that he needs for his eyes from an ophthalmologist; and

8.) TDOC, Strada, Phillips, and Cobble to modify cells at BCCX Site Two in accordance with 28 C.F.R. 35. 152 (b) (3).

B.) An award of nominal, compensatory, and punitive damages from each Defendant for each claim that they are being sued for.

C.) An award for filing fees, cost, and expenses.

D.) Such other relief as this Honorable Court deems equitable and just.

## Unnotarized Oath

Under penalty of perjury, I swear that everything stated herein is true and correct.

Executed on the 23 day of October 2024.

By: _(signature)_

Harold Hempstead, Inmate# 5777366

19

Bledsoe County Correctional Complex

1045 Horsehead Road

Pikeville, Tennessee 37367

20

Harold Hempstead, IIM#577366
Bledsoe County Correctional Complex
1045 Horsehead Road
Pikeville, Tennessee
          37367



X-RAYED

United States District Court
Clerk's Office
900 Georgia Avenue, Room 309
Chattanooga, Tennessee
          37402

THE DEPARTMENT OF CORRECTIONS
BCCX HAS NEITHER INSPECTED
NOR CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS

Received
OCT 2 4 2024
BCCX Mailroom
Outgoing